UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.

Criminal No. 4:24cr50

ROBERT PAUL ROSELL, JR.,
        Defendant.

<u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant Robert Paul Rosell, Jr.'s ("Defendant") Motion to Dismiss the Indictment. ECF No. 15. The Indictment charges Defendant with a single count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Defendant alleges that § 922(g)(1) is unconstitutional on its face and as applied to him under the Second Amendment of the United States Constitution. The Government filed a brief in opposition to Defendant's motion, ECF No. 16, and Defendant filed a timely reply brief, ECF No. 17. For the reasons stated below, Defendant's motion is **DENIED**.

**I. FACTUAL BACKGROUND**

On August 12, 2024, a grand jury indicted Defendant on one count of Possession of a Firearm by a Convicted Felon under 18 U.S.C. § 922(g)(1). ECF No. 1. Before this indictment, Defendant had been convicted of multiple felonies, including two felonies for unauthorized use of a motor vehicle, two felony eluding convictions, felony possession of methamphetamine, felony assault

on a law enforcement officer, and felon in possession of a firearm. ECF No. 11, at 5-8. Defendant was arraigned on August 20, 2024, and is currently awaiting trial. ECF No. 12.

## II. LEGAL STANDARD

### A. Motion to Dismiss an Indictment

A district court may dismiss an indictment, or a portion thereof, if an offense charges a violation of an unconstitutional statute. United States of America v. Riley, 635 F.Supp.3d 411, 416 (E.D. Va. 2022). Rule 12(b)(3) of the Federal Rules of Criminal Procedure requires a defendant to object to a defective indictment prior to trial "if the basis for the motion is . . . reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Here, Defendant challenges the constitutionality of the lone statute under which he is charged in the indictment and the Government does not challenge the procedural propriety of his pretrial motion. Defendant's motion is therefore ripe for decision.

### B. Facial vs. As-Applied Challenge

Defendant argues that 18 U.S.C. § 922(g)(1) violates the Second Amendment facially and as applied to him. ECF No. 15, at 1, 20-22. To succeed on a facial challenge, a defendant "must establish that no set of circumstances exists under which [§ 922(g)(1)] would be valid." United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481

2

U.S. 739, 745 (1987)). "Because of this stringent standard, a facial challenge is perhaps 'the most difficult challenge to mount successfully.'" Id. (quoting Salerno, 481 U.S. at 745) On the other hand, to succeed on an as-applied challenge, a defendant must establish "only that the law is unconstitutional as applied to the challenger's case." United States v. Mgmt. Consulting, Inc., 636 F. Supp. 3d 610, 619 (E.D. Va. 2022).

## C. Recent Development of Second Amendment Jurisprudence

The Second Amendment to the United States Constitution provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court struck down a District of Columbia law that prohibited the private possession of handguns in homes. 554 U.S. 570, 635 (2008). In reaching its conclusion, the Court considered the text and history of the Second Amendment and concluded that it protected "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 634.

After Heller, federal courts across the country, including the United States Court of Appeals for the Fourth Circuit, implemented a two-step approach to analyzing Second Amendment challenges. United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). Under this test, courts first determined "whether the challenged law impose[d] a burden on conduct falling within the

scope of the Second Amendment's guarantee [as its text was understood] at the time of ratification." Id. If the regulation fell within the scope of the Second Amendment, courts "applied sliding-scale, means end-scrutiny where the burden imposed on the right was weighed against the government's interest." United States v. Sullivan, No. 4:24cr27, 2024 WL 3540987, at *2 (E.D. Va. July, 25, 2024).

In 2022, this two-step test was rejected by the Supreme Court because the "means-end scrutiny" portion of the test was deemed inconsistent with Heller's reliance on text and history. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 19, 22 (2022). Instead, the Court determined that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. at 17. Accordingly, when conduct falls within the scope of the Second Amendment, the Government has the burden of "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. For courts to uphold the constitutionality of a regulation under this test, the Government must "identify a well-established and representative historical analogue," with sufficient similarities to the regulation at issue, though it need not be "a historical twin." Id. at 30. The challenged regulation must be "'relevantly similar' to laws that

4

our tradition is understood to permit." <u>United States v. Rahimi</u>,
144 S. Ct. 1889, 1898 (2024) (emphasis added).

### III. ANALYSIS

Under 18 U.S.C. § 922(g)(1), it is unlawful for "any person
who has been convicted in any court of, a crime punishable by
imprisonment for a term exceeding one year" to possess any firearm
or ammunition.  The dispute before this Court is whether this
statute is facially unconstitutional, or unconstitutional as
applied to Defendant, in the face of the Second Amendment's
protection of the right to bear arms.

### A. Facial Challenge

Defendant first argues that § 922(g)(1) is facially
unconstitutional. ECF No. 15, at 1, 20-22.  Defendant, however,
as he must, admits that the Fourth Circuit has expressly rejected
this position.  Id. at 1, n.1.  In June of this year, the Fourth
Circuit held that "Section 922(g)(1) is facially constitutional
because it 'has a plainly legitimate sweep' and may
constitutionally be applied in at least <u>some</u> 'set of
circumstances.'" <u>United States v. Canada</u>, 103 F.4th 257, 258 (4th
Cir. 2024) (quoting <u>Washington State Grange v. Washington State
Republican Party</u>, 552 U.S. 442, 449 (2008).  This Court is bound
by this controlling precedent and Defendant's facial challenge to
§ 922(g)(1) is therefore **DENIED**.

## B. As-Applied Challenge

Defendant next argues that § 922(g)(1) is unconstitutional as-applied to him because he is part of "the people" protected by the Second Amendment and because the Government cannot satisfy its burden of demonstrating that felon-disarmament laws are consistent with our "historical tradition of firearm regulation." ECF No. 15, at 1-2. In response, the Government argues that this Court is bound by Fourth Circuit precedent in Moore, Pruess, and Canada, upholding the constitutionality of § 922(g)(1) facially and as applied to defendants that were convicted felons. ECF No. 16, at 25-26. In contrast, Defendant asserts that, because Bruen and Rahimi "implicitly overruled Chester and Moore, those cases no longer control the Second Amendment analysis" in the Fourth Circuit. ECF No. 17, at 9. For the reasons stated below, this Court finds that Moore, Pruess, and Canada continue to bind this Court.

### 1. Defendant's Conduct is Outside of the Second Amendment's Scope

Under Bruen's first step, this Court must determine whether "the Second Amendment's plain text covers" the possession of firearms by Defendant, who is a convicted felon. In the wake of Heller, but prior to Bruen, the Fourth Circuit upheld the constitutionality of § 922(g)(1) when addressing as-applied challenges advanced by two different convicted felons. See United

6

States v. Moore, 666 F.3d 313, 315 (4th Cir. 2012) (holding that § 922(g)(1) was constitutional as-applied to a defendant with "felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official"); United States v. Pruess, 703 F.3d 242, 244 (4th Cir. 2012) (holding that § 922(g)(1) was constitutional as-applied to a defendant that had "been [previously] convicted of numerous [non-violent] firearms violations"). Here, the parties do not dispute that these decisions directly resolve whether a felon's possession of firearms is protected under the scope of the Second Amendment. However, they disagree as to whether these cases continue to bind this Court.

Defendant first contends that these cases were implicitly overruled by the Supreme Court because Bruen adopted a new standard for analyzing Second Amendment challenges. It is true that the Supreme Court rejected the means-end balancing test that was in place at the time that Moore and Pruess were decided. Bruen, 597 U.S. at 17-19. But in both of these cases, the Fourth Circuit's holding did not turn on the application of this now abrogated test and instead "relied on the presumptive lawfulness of felon-disarmament laws" as provided in Heller. Sullivan, 2024 WL 3540987, at *3.[1]

---

[1] Defendant argues that "Heller's discussion of 'presumptively lawful regulatory measures'" is dicta that does not bind this Court. ECF No. 17, at 3-5. However, whether or not this language is dicta in Heller is ultimately not relevant to

Consistent with the holdings of other judges of this Court, _Bruen's_ adoption of a new standard left "the 'presumptive lawfulness' of felon in possession statutes undisturbed," as its discussion of that issue was expressly consistent with its prior decisions in _Heller_ and _McDonald v. City of Chicago_, 561 U.S. 742 (2010). _United States v. Riley_, 635 F. Supp. 3d 411, 422 (E.D. Va. 2022) (quoting _Bruen_ 597 U.S. at 31). In fact, multiple justices writing separately in _Bruen_ stressed that the decision did not disturb _Heller's_ and _McDonald's_ recognition of the presumptive validity of "longstanding prohibitions on the possession of firearms by felons." _Bruen_, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); _id._ at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in _Heller_ or _McDonald_ about restrictions that may be imposed on the possession or carrying of guns."); _id._ at 2189 (Breyer, J., dissenting) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on [the firearms regulations that] _Heller_ identified as 'presumptively lawful.'"). This still-valid presumption first articulated in _Heller_ was very recently reaffirmed by the Supreme Court. In _United States v. Rahimi_, the Court explained that "_Heller_ never established a categorical rule that the Constitution

---

whether it is binding on this Court because, as explained below, the Fourth Circuit adopted this presumption in _Moore_ and _Pruess_. Therefore, the implementation of this presumption by the Fourth Circuit is binding on this Court.

prohibits regulations that forbid firearm possession in the home"; instead, Heller "stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. 1889, 1902 (2024). Therefore, this Court finds that Bruen did not undermine Heller's recognition that prohibitions on the possession of firearms by felons are presumptively lawful, and thus, did not implicitly overturn Moore or Pruess.

Separately from his claim that Bruen overruled Fourth Circuit precedent, Defendant argues that: (1) the text of the Second Amendment guarantees the right of "the people" to keep and bear arms; (2) Rahimi establishes that felons qualify as "the people" because it expressly rejected the Government's claim that only "responsible people" were constitutionally protected; and (3) Rahimi therefore overrules the Fourth Circuit's prior holdings that only "law-abiding, responsible citizens" are part of "the people" protected by the Second Amendment.   See ECF No. 15, at 8-9; Moore, 666 F.3d at 319 ("Moore simply does not fall within the category of citizens to which the Heller court ascribed the Second Amendment protection of "the right of law-abiding responsible citizens to use arms in defense of hearth and home." (emphasis added) (quoting Heller, 554 U.S. at 635)).   In short, Defendant contends that because Rahimi did not limit the scope of

"the people" to "law-abiding" citizens it signaled its rejection of this position.

This Court disagrees with the implicit rejection as proposed by Defendant, because "law abiding" and "responsible" constitute two discrete categories of individuals. First, during oral argument in Rahimi, the Solicitor General presented the terms "law-abiding citizens" and "responsible citizens" as two distinct categories, arguing that the first are non-felons, while the second are individuals who are objectively non-dangerous. See United States v. Rahimi, No. 22-915, Tr. of Oral Arg. at 29-32 (arguing that while "dangerousness defines the category of those who are not responsible," "different principles [apply] with those who are not law-abiding"). Second, although the Rahimi Court rejected the Government's argument that people who are "not responsible" fall outside of the scope of the Second Amendment protections, the Court did not refer to the term "law-abiding citizen" once throughout its detailed opinion. Moreover, this same opinion that expressly rejects a test that would not extend Second Amendment protections to non-responsible citizens repeats the statement from Heller that restrictions on felons are "presumptively lawful." Rahimi, 144 S. Ct. at 1902 (quoting Heller, 554 U.S. at 626, 627 n.26).

The lack of any references in Rahimi to the Government's separate line of argument is wholly consistent with the finding that "responsible" and "law-abiding" citizens are in fact two

distinct categories.  As to the first category, to the extent prior precedent holds that a person who is not "responsible" is not protected under the scope of the Second Amendment, this position is directly overruled by <u>Rahimi</u>.  In contrast, as to the second category, this Court finds that <u>Rahimi</u> does not disturb the holdings in <u>Moore</u> and <u>Pruess</u> that, because restrictions against felons are "presumptively lawful," the possession of a firearm by a "non-law-abiding" felon is "plainly outside the scope of the Second Amendment."  <u>Moore</u>, 666 F.3d at 320.

Therefore, the Court finds that Defendant's as-applied challenge is controlled by <u>Moore</u> and <u>Pruess</u>.  The <u>Moore</u> Court found that while the Supreme Court had not yet defined what the category of "law-abiding citizen" under the Second Amendment encompassed, "in light of [Moore's] extensive and violent criminal history, Moore's conduct . . . [was] plainly outside the scope of the Second Amendment."  <u>Id.</u> at 319-20.  Similarly, in <u>Pruess</u> the Fourth Circuit found that while Pruess was a non-violent felon, he could not "rebut the presumption of lawfulness of the felon-in-possession prohibition as applied to him . . . [because his] repeated violations of the firearms laws . . . ma[de] clear he [was] hardly 'law-abiding.'"  <u>Pruess</u>, 703 F.3d at 246.  Thus, the Court held that "Pruess' conduct lies outside the scope of the Second Amendment's protection."  <u>Id.</u>  Here, Defendant is likewise far from law-abiding.  He has been convicted of multiple felonies,

including two felonies for unauthorized use of a motor vehicle, two felony eluding convictions, felony possession of methamphetamine, felony assault on a law enforcement officer, and felon in possession of a firearm. ECF No. 11, at 5-8. Thus, like the defendants in Moore and Pruess, Defendant's possession of a firearm falls outside of the scope of the Second Amendment.

Finally, even if this Court were not bound by Moore and Pruess, it would nevertheless conclude, as a majority of judges in this Court have held, that "felons are not considered a part of 'the people' as historically understood." United States v. Hill, 703 F. Supp. 3d 729, 740-42 (E.D. Va. 2023); see also United States v. Riley, 635 F. Supp. 3d 411, 424 (E.D. Va. 2022) (finding that "[a] plain reading of the text demonstrates that" the term "the people" as provided in the Second Amendment "remains limited to those within the political community and not those classified as felons"); United States v. Lane, 689 F. Supp. 3d 232, 243 (E.D. Va. 2023) (same); United States v. Jernigan, No. 3:24cr104, 2024 WL 4294648, at *3 (E.D. Va. Sept. 24, 2024) (same); United States v. Sullivan, No. 4:24cr27, 2024 WL 3540987, at *5 (E.D. Va. July 25, 2024) (same); but see United States v. Coleman, 698 F. Supp. 3d 851, 860-68 (E.D. Va. 2023) (finding that Moore and Chester "no longer constitute[] binding precedent" after Bruen and holding that felons were included within the term "the people" and were therefore protected under the Second Amendment). Having failed to

offer an effective challenge to the presumptive lawfulness of § 922(g)(1), Defendant's as-applied challenge is **DENIED**.

### 2. Felon in Possession Statutes are Consistent with this Nation's Historical Tradition of Firearm Regulations

Even if this Court were to conclude that Defendant's status as a felon did not remove him from "the people" protected by the Second Amendment, Defendant's motion would fail under the second part of the <u>Bruen</u> test. As explained below, the Court finds that "felon in possession prohibitions are consistent with the Founder's understanding of the Second Amendment at ratification" based on the "historical reason-by-analogy approach." <u>Riley</u>, 635 F. Supp. 3d at 243; <u>see also</u> <u>United States v. Coleman</u>, No. 3:22cr87, 2023 WL 6690935, at *11-15 (E.D. Va. Oct. 12, 2023); <u>United States v. Sullivan</u>, No. 4:24cr27, 2024 WL 3540987, at *4 (E.D. Va. July 25, 2024).

Under this test, the Government must demonstrate that the challenged regulation, here § 922(g)(1), is "consistent with this Nation's historical tradition of firearm regulation."[2] <u>Bruen</u>, 597

---

[2] To the extent that Defendant contends that this Court "<u>must</u> 'decide a case based on the historical record compiled by the parties'" this argument is not supported by the text in <u>Bruen</u>. ECF No. 15, at 5 (emphasis added) (quoting <u>Bruen</u>, 597 U.S. at 25 n.6). In <u>Bruen</u>, when the Court addressed the concern that "judges are relatively ill equipped to resolve difficult historical questions," it explained that "[c]ourts are thus <u>entitled</u> to decide a case based on the historical record compiled by the parties." <u>Bruen</u>, 597 U.S. at 25, n.6. This Court finds that interpreting this language as an obligation imposed on courts to rely <u>only</u> on the Government's briefing is problematic, as "the result could lead different courts to give the same law diametrically opposing treatment." <u>United States v. Banuelos</u>, 640 F. Supp. 3d 716, 721 (W.D. Tex. 2022).

U.S. at 19, 22.  The challenged regulation is constitutional if it has a historical analogue — a "historical twin" is not required. Rahimi, 144 S. Ct. at 1986.  That is, the Court must determine whether § 922(g)(1) "is 'relevantly similar' to laws that our tradition is understood to permit," id., though this standard will require much greater similarity when a challenged regulation addresses a "general societal problem that has persisted since the 18th century," Bruen, 597 U.S. at 26.  In the end, "[w]hy and how the regulation burdens the [constitutional] right are central to th[e] inquiry." Rahimi, 144 S. Ct. at 1898.

First considering the "how," Defendant asserts that the Government cannot prove a historical tradition of lifetime restrictions on the right of felons to bear arms.  This Court disagrees, finding that published case law reveals a historical tradition of categorical restriction of liberties for felons, which is appropriately extended to the dispossession of firearms. As recently explained by the Fifth Circuit, the proper analysis is not strictly confined to those laws limiting access to guns; rather, this Court may consider "laws regulating [felons as a] group, even if they are not explicitly related to firearms." United States v. Diaz, -- F.4th --, No. 23-50452, 2024 WL 4223684, at *6 (5th Cir. Sept. 18, 2024).

At common law, most felons faced execution, not years of incarceration in a penitentiary followed by release.  See Baze v.

Rees, 553 U.S. 35, 94 (2008) (Thomas, J., concurring) (finding that during the founding era, the death penalty was ubiquitous; it was the standard penalty for all serious crimes).  Accordingly, there was no need for statutes categorically restricting felon's possession of guns.  See Diaz, 2024 WL 4223684, at *6 (recognizing that historically those convicted of horse theft, the closest analogue of vehicle theft, were often subject to the death penalty, establishing our country's historical tradition of severely punishing people who commit felonies); cf. United States v. Jackson, 110 F.4th 1120, 1127 (8th Cir. 2024) (finding that it would be difficult to conclude that the "public, in 1971, would have understood someone facing death [] would be within the scope of those entitled to possess arms").

The usage of estate forfeiture as punishment for felons provides additional historical support for categorical restrictions on gun ownership.  See Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 nn. 275 & 276 (2014); see, e.g., 2 Records of the Court of Assistants of the Colony of the Massachusetts Bay 1630-1692, at 32 (John Noble ed., 1904) (punishing theft by ordering, among other penalties, that "all his estate shalbe [sic] forfected [sic]"); United States v. Coombes, 629 F. Supp. 3d 1149, 1157-58 (N.D. Okla. Sept. 21, 2022) (discussing the use of bills of attainder and a founding era New York statute prohibiting felons from possessing property).  These

15

examples show a historical tradition of severe categorical punishment for felons, which includes depravation of life and liberty, that may be permissibly extended to the right to possess firearms. Thus, the record is sufficient to demonstrate that disarming Defendant (who has been convicted of numerous felonies) fits within this tradition of serious and at times irreversible punishment for felons. See Diaz, 2024 WL 4223684, at *7.

As to the "why" behind § 922(g)(1), Defendant challenges the Government's ability to identify a valid rationale for permanently disarming felons that is consistent with the Nation's historical tradition. ECF No. 17, at 16-18. This Court finds, however, that the purpose of restricting felons from accessing guns and the purpose behind the historically harsh punishment of felons (including death) are the same. The reasoning behind the harsh capital punishment and estate forfeiture laws in colonial America was deterrence, retribution, and penitence. Diaz, 2024 WL 4223684, at *7. The purpose behind § 922(g)(1) is: "to keep firearms out of the hands of those who are 'a hazard to law-abiding citizens' and who had demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" Id. (quoting 114 Cong. Rec. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana)). Ultimately, all of these penalties from capital punishment to a permanent ban on possessing a firearm serve the same purpose: to deter lawlessness and violence.

Lastly, this Court also finds the Rahimi Court's analysis on "surety laws" and "going armed laws" instructive.  Surety laws were a form of preventative justice that could be used to avoid all forms of violence, but targeted the misuse of firearms. Rahimi, 144 S. Ct. 1891, 1899-1901.  "Going armed" laws provided "a mechanism for punishing those who had menaced others with firearms."  Id. at 1891.  These types of laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 1901.  Defendant seeks to undercut this position by arguing that because "surety laws" and "going armed laws" provide short-term, temporary restrictions on gun possession, they are poor analogues.  ECF No. 15, at 22-23 (citing Bruen and Rahimi). However, while temporary, these laws discussed in both Bruen and Rahimi are still instructive as to the reasons why certain people are restricted from possessing guns.  Further, while it is true that § 922(g)(1) provides a default permanent ban on gun possession by felons, federal statute expressly provides that the right to possess a gun may be restored when a felon's "record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety."  18 U.S.C. § 925(c).  This further demonstrates that the purpose of § 922(g)(1) and "surety laws" and "going armed laws" is the same — disarm an individual that poses a threat to public safety.

17

In summary, were this Court called upon to analyze whether § 922(g)(1) is supported by a historical analogue from the common law and founding eras, the Court would find that emerging published case law resolves this question. The resolution, consistent with numerous statements by the Supreme Court regarding the longstanding tradition of restricting a felon's right to possess a firearm, supports the constitutionality of § 922(g)(1) as applied to Defendant, a person that has been repeatedly convicted of felony offenses.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the indictment is **DENIED**. ECF No. 15. The Clerk is **DIRECTED** to forward a copy of this Order to Defendant's counsel and counsel for the United States.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October  9 , 2024

18